IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH ALLEN GAY, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:11-cv-659-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
|     Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Joseph Allen Gay, ("Plaintiff" or "Gay") applied for supplemental security income (SSI) under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1481-83c in October 2009. (Tr. 109-11). Gay alleged that he became disabled on February 4, 2007[1] after a motor vehicle accident. (Tr. 109, 134). Gay timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on January 25, 2011. (Tr. 12-25). Gay in turn petitioned for review to the Appeals Council who rejected review of Gay's case on March 25, 1011. (Tr. 11). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Pursuant to 28 U.S.C. § 636 (c), the parties have consented to entry of final judgment by the United States Magistrate Judge. Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful

---

[1]Although Plaintiff names February 4, 2007 as the onset date, the medical records are clear that the car accident, which he claims caused some of his disabling health problems, occurred on February 6, 2007. (Tr. 209).

scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact,

and even if the evidence preponderates against the Commissioner's findings.  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  There is no presumption that the Commissioner's conclusions of law are valid.  *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[2]  *See* 42 U.S.C. §

423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate

and distinct program.  SSI is a general public assistance measure providing an additional

resource to the aged, blind, and disabled to assure that their income does not fall below

the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See*

42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate

programs, the law and regulations governing a claim for DIB and a claim for SSI are

identical; therefore, claims for DIB and SSI are treated identically for the purpose of

determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.

1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the

meaning of the Social Security Act which defines disability in virtually identical language

for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§

404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is

unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one

resulting from anatomical, physiological, or psychological abnormalities which are

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.
*See* Social Security Administration, Social Security Handbook, § 136.1, *available at*
http://www.ssa.gov/OP_Home/handbook/handbook.html
[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general
tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100,
*available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id.*

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

### III.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Gay testified that he was 53 years old and completed ninth grade.  (Tr. 30).  Gay has not worked since 1998, nine years prior to his alleged onset date of February 4, 2007.  (Tr. 109, 134).  In the past 15 years, Gay has worked as a forklift driver and furnace loader.  (Tr. 134-135).  Gay testified that he is now unable to work because of headaches, and balance and memory problems.  (Tr. 32).  Gay claims that he has headaches about

---

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

three to four times a week and he rates the headache pain as a ten on a ten point scale. *Id.* He testified that he has to lie down and rest for about four hours to relieve the pain. (Tr. 32-33). Furthermore, Gay testified that his prescription Lortab does not eliminate his lower back pain. (Tr. 34). He also testified that he has muscle spasms which start in his right arm and extend into his neck. (T. 35). Since August 2009, Gay has performed certain household chores, but he testified that the activities take longer to complete because of his dizziness. (Tr. 36). Specifically he testified when he cuts wood, his hands stiffen and he has to sit down (Tr. 35).

The ALJ found that Gay had not engaged in substantial gainful activity since August, 24, 2009, the application date. (Tr. 17). He found that Gay's status post-motor-vehicle accident in February 2007, his headaches, low back pain and hypertension were severe, but that he did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (2011). (Tr. 17). The ALJ found that Gay retained the residual functional capacity ("RFC") to perform the full range of medium work which involves lifting no more than 50 pounds at a time with frequent lifting or carrying up to 25 pounds. (Tr. 17). *See* 20 C.F.R. § 416.967(c). The ALJ also found that Gay is able to perform his past work as a forklift driver (medium, semi-skilled) and furnace loader (medium, unskilled.) (Tr. 20). Alternatively, the ALJ found that Gay could perform other work that exists in significant numbers in the national economy by applying Medical-Vocational Rule 203.19. (Tr. 21). Thus, the ALJ concludes that Gay was not disabled as defined by the Act. (Tr. 22).

## IV.  MEDICAL HISTORY

Gay's medical records are spotty.  The first submitted records show Gay was injured in a motor vehicle accident on February 6, 2007, was hospitalized and discharged on February 10, 2007.  (Tr. 209-218).  The accident occurred when Gay ran a red light while intoxicated and struck another car.  (Tr. 209).  Gay was admitted to the hospital on a ventilator and placed in the intensive care unit.  Gay sustained a pulmonary contusion and subarachnoid hemorrhage from the wreck, but was neurologically intact, awake, alert and able to move all extremities.  He made good progress over the next few days and was discharged on February 10, 2007.  (Tr. 209).  The next records show Gay received medication management for hypertension while incarcerated in the Coffee County Jail in March and April of 2010.  (Tr. 234-239).

In June, 2010, Gay saw Dr. John M. Allgood, a family practitioner, for the first time and requested medication for hypertension and pain.  (Tr. 243).  He also complained of difficulty swallowing, and vision problems, lower back pain, dizziness, fainting and numbness in his feet.  *Id.*  Plaintiff had a normal examination.  Specifically, Dr. Allgood found Gay had a normal general appearance and his cardiovascular, musculoskeletal and neurological systems were also normal.  (Tr. 243-244).  Dr. Allgood ordered laboratory tests (Tr. 245-50), and found Gay had an H. pylori infection.  He prescribed antibiotics and blood pressure medications for Gay.  (Tr. 244).

Gay saw Dr. Allgood again on July 29, 2010 with complaints of shortness of breath, back and shoulder pain, spasms in his right upper arm and choking.  Dr. Allgood found  Gay's blood pressure was  elevated and he  assessed esophageal reflux and

intercostal myositis.  (Tr. 241).  He prescribed antibiotics and medication for esophageal reflux.  (Tr. 242).  On September 8, 2010 Gay complained of a bad cold and requested a muscle relaxer and pain medication.  (Tr. 254).  Dr. Allgood diagnosed acute bronchitis, esophageal reflux and intervertebral disc degeneration and prescribed medications.  (Tr. 255).  On November 10, 2010, Gay complained that he continued to have "some trouble swallowing" and needed refills of his pain medications.   (Tr. 252).   Dr. Allgood diagnosed dysphagia, joint pain, and hypertension.   (Tr. 252).   He prescribed pain medication and a muscle relaxant, as well as medication for esophageal reflux.  (Tr. 253).

In connection with his application for benefits, Gay underwent two consultative examinations.  Gay was seen by Dr. James O. Colley, a general surgeon, on November 23, 2009 for a physical and neurological examination (Tr. 220-26). In December, 2009, Eugene E. Fleece Ph.D, a State agency physician, conducted a mental evaluation of Gay.  (Tr. 227-230).   Gay complained to Dr. Colley about constant headaches, difficulty swallowing, low back pain, sinusitis, possible obstructive sleep apnea, poor balance and hypertension.   (Tr. 220-21).   He said over-the-counter medications did not help his headaches and that his memory is failing.  (Tr. 221).  Gay said that he could walk about a half a mile, sit without any difficulty, stand for about an hour before having balance problems, care for his own personal needs, sweep for 20-30 minutes, make the bed, do laundry and dishes, cook, and shop, but did not do yard work or drive.  (Tr. 221-22).  He stated that since his accident, he has reduced his drinking from about a case and a half of beer to a six-pack of beer per week.  (Tr. 222).

Dr. Colley reported on physical examination that Gay spoke clearly was well-built, well-nourished, fully oriented and in no acute distress.  Gay had normal gait, station and coordination and was able to squat and stand without assistance.  He had full range of spinal and joint motion except for mild pain on full passive range of right shoulder motion.  Gay had no trouble getting on and off the exam table and moving from a seated position to a standing position.  (Tr. 222, 224-225).  Gay also had full strength and normal sensation and reflexes.  (Tr. 225).  Dr. Colley noted a normal examination but diagnosed traumatic headaches, sinusitis, a history of dysphagia and alcohol abuse and myofacial upper thoracic spine pain.  (Tr. 226).

 Dr. Fleece stated in his "Mental Summary" of Gay that "[w]e don't have any reason to think there is anything substantial to evaluate in terms of down memory, so would not suggest a CE."  (Tr. 230)  In making this determination, Dr. Fleece asked his assistant, Gail F. Johnson, to contact Gay and ask him to give examples of his memory impairment.   Gay gave the example of having to use a grocery list, and failing to remember the days of the week.  Dr. Fleece dismissed the first as "not impressive" and the second as "very common".  (Tr. 230).   Furthermore, Dr. Fleece noted that Gay "rambled a good deal" when asked to give examples of memory impairments "as if he was trying to produce something in support of his allegation."  (Tr. 230).

Dr. Fleece also discounted Gay's 2007 automobile accident as a cause of any "cognitive damage" because there were no records of such impairment over the last two years.  Dr. Fleece noted Gay's "vague" complaints of memory, understanding and dealing with others, but concluded he "does not sound withdrawn" because he cooks out with

friends, watches games, and has a fianceé.  Moreover, Dr. Fleece was unimpressed by Gay's claim of confusion with changes, noting "he handles money well in all areas." (Tr. 230).


## V. ISSUES

Gay raises five issues for judicial review:

(1)   Whether the ALJ failed to fulfill his duty to develop the record by not providing an RFC supported by a physician's opinion?  (*See* Doc. 9 at 4).

(2)   Whether the ALJ failed to fulfill his duty to develop the record by not following the Psychiatric Review Technique Form.  (PRTF)?  (*See* Doc. 9 at 4).

(3)   Whether the ALJ failed to address all the limitations of the claimant's severe impairments in the RFC assessment?  (*See* Doc. 9 at 4).

(4)   Whether the ALJ considered past relevant work that was not substantial, gainful activity in finding that Gay is able to perform his past work as a forklift driver and furnace loader?  (*See* Doc. 9 at 4).

(5)   Whether the ALJ erred in relying on the testimony of Patrick Sweeney, the VE?  (*See* Doc. 9 at 5).

## VI. DISCUSSION

**Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Perform a Full Range of Medium Work.** [6]

The ALJ concluded that Gay had the residual functional capacity ("RFC") to perform a full range of medium work. (Tr. 17-19).  The Commissioner's decision is due to be affirmed "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel,* 185 F. 3d 1211, 1213 (11th Cir. 1999).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart,* 405 F. 3d 1208, 1211 (11th Cir. 2005).

In making this finding, the ALJ stated that he carefully considered the record as a whole.  (Tr. 17).  Indeed, the ALJ thoroughly summarized Gay's complaints of headaches, dizziness, low back pain and high blood pressure and their severity as presented by Gay at the hearing before the ALJ.  (Tr. 18).  However, the ALJ noted a lack of any medical treatment for Gay from February, 2007 until he received treatment for hypertension during his incarceration at the Coffee County Jail in March and April 2010. (18-19; 235-239).  The ALJ also relied on Dr. Colley's consultative exam findings made in November, 2009, which detailed no objective findings which would corroborate Plaintiff's complaints of pain, (Tr.18-19; 222-225), and Dr. Allgood's treatment notes, beginning in June, 2010, which also showed few objective findings and in which he recommended only the most conservative treatment possible.  (Tr. 19; 243-53).  Thus,

---

[6] In this section the court addresses both of Plaintiff's arguments set out as issues (1) and (3) above.

the court concludes that the ALJ's determination is one that a reasonable person would accept, and therefore, substantial evidence exists to support the ALJ's conclusion as to Gay's RFC.  *Id.* at 1211.

Gay further argues that "the correct legal standards were [not] applied",  *Kelley,* 185 F. 3d at 1213, since the RFC finding was not directly supported by a treating or examining physician's opinion as required by *Coleman v. Barnhart,* 264 F.Supp. 1007, 1010 (S.D. Ala. 2003).  (Pl. Br. at 5-8).  However, this court has previously addressed this very argument in *Daniels v. Astrue*, 2012 WL 353756 (M.D. Ala. 2012), and distinguished *Coleman* on the basis of its facts and because the *Coleman* court gave no citation to any source of law requiring a physician's assessment for the purposes of making an RFC determination.  *Id.* *4.

This court further explained that it was persuaded by the reasoning of Judge Foy Guin in *Langley v. Astrue,* 777 F.Supp.2d 1250, 1257-60 (N.D. Ala. 2011).  Indeed, *Langley* disagreed with the *Coleman* reasoning finding that it "attempt[s] to place the burden of proving the claimant's RFC on the Commissioner at step five" and this shifting of the burden is "inconsistent with the Commissioner's regulations, Supreme Court precedent and unpublished decisions in this Circuit."  *Daniels, supra*, at * 5 citing  *Id.* at 1260. (Citations omitted).  Accordingly the Court concludes that Gay's argument fails and the ALJ did not err in finding Plaintiff's RFC without the benefit of a physician's assessment in the record.

**The ALJ Reasonably Evaluated Plaintiff's Alleged Mental Problems.**

Gay argues that the Commissioner's decision should be reversed because the ALJ failed to fulfill his duty to develop the record by not completing a Psychiatric Review Technique Form ("PRTF") or at least using its mode of analysis.  (Pl. Br. at 9-11).  The Commissioner argues that even if the ALJ should have included a PRTF, either by appending the document or incorporating the analysis, that the error was harmless and should not be a cause for reversal of the ALJ's decision.  *See Diorio v. Heckler,* 721 F.2d 726 (11th Cir. 1983) (holding error harmless where appropriate facts are applied to reach a conclusion and are supported by the record.)

> The ALJ, discounted Gay's allegations of mental problems stating that although he
>
> "alleged some complaints in his activities of daily living; [Gay] however, testified that he is able to cook out with friends, watch sports games and he reported that he has a fiancee." [sic]

(Tr. 19).  Moreover, the record demonstrates that Gay could read and write, perform basic math, understand and respond to questions at the hearing before the ALJ, provide for his own personal care, prepare meals, do housework and some yard work and walk where he needed to go.  (Tr. 30, 159, 161).  Additionally the record demonstrates that Gay was able to provide detailed and comprehensive information about his past medical history to Dr. Colley and Dr. Allgood.  (221, 241-50).  Further, during the consultative examination with Dr. Colley, Gay was consistent, gave good effort, had clear speech, and was fully alert and oriented.  (Tr. 222).  It is significant that Gay did not complain of any cognitive difficulties to his treating physician, Dr. Allgood  (Tr. 241-55) and the record contains no medical source observations of any sort of cognitive or mental problems.

Additionally, Eugene E. Fleece Ph.D, a State agency physician, stated in his "Mental Summary" of Gay that "[w]e don't have any reason to think there is anything substantial to evaluate in terms of down memory, so would not suggest a CE."  (Tr. 230). Dr. Fleece also discounted Gay's 2007 automobile accident as a cause of any "cognitive damage" because there were no records of such impairment over the last two years.  (Tr. 230).  Dr. Fleece noted Gay's "vague" complaints of memory, understanding and dealing with others, but concluded he "does not sound withdrawn" because he cooks out with friends, watches games, and has a fianceé.  (Tr. 230).  Moreover, Dr. Fleece was unimpressed by Gay's claim of confusion with changes, noting "he handles money well in all areas." (Tr. 230).   Accordingly, the court concludes because substantial evidence exists to support the ALJ's conclusion that Gay's allegations of mental problems were not supported by the record, *Moore,* 405 F. 3d at 1211, the ALJ's failure to include a PRTF, was harmless error and is not a ground for reversal of the ALJ's decision.  S*ee Diorio,* 721 F.2d 726.

**The ALJ did not commit reversible error by considering past relevant work that was not substantial, gainful activity.**

Gay's earnings record demonstrates that he did not earn at least an average of $500.00 per month from 1991 to 1998.  (Tr. 118-125).  According to regulations, "past relevant work" is described as work Plaintiff performed within the past fifteen years that was substantial, gainful activity and lasted long enough for the claimant to learn to do it. *See* 20 C.F.R. § 416.960(b).  Generally, monthly earnings do not qualify as substantial gainful activity when Plaintiff earned less than or equal to $500.00 per month between

January 1990 and June 1999.  *See* 20 C.F.R. § 416.974(b)(2)(1).

The Commissioner admits that the ALJ erred in concluding that Gay's work within the past 15 years was "past relevant work" as defined under the Act.  The court concludes, however, that this error was harmless because the ALJ made an alternative finding at step five.  Specifically, the ALJ found that on the basis of Plaintiff's residual functional capacity for a full range of medium work, Medical-Vocational Rule 203.19 allowed for the determination that Plaintiff was not disabled.  (Tr. 21).  *See Shinseki v. Sanders,* 556 U.S. 396, 409; 129 S.Ct. 1696, 1705-06 (2009)(the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.); *Diorio,* 721 F.2d at 728(when an incorrect application of the regulations results in harmless error because the correct application would not alter the ALJ's ultimate conclusion, there is no basis for reversal.)  Thus, the court concludes the ALJ did not commit reversible error by considering past relevant work that was not substantial, gainful activity.

### The ALJ did not commit reversible error by relying on the testimony of the Vocational Expert.

Gay argues that the ALJ erred in relying on the testimony of Mr. Sweeney, the VE, because it does not support the ALJ's decision.  Specifically, Gay argues that the ALJ quoted the VE as testifying that "claimant was able to return to all of this past relevant work within his [RFC]."  (Tr. 20).  Gay, however, also points out that the VE noted he was unsure that Gay's "past relevant work" qualified as "substantial gainful employment."  (Tr. 38).  For the reasons stated *supra* the court concludes that any alleged

error based on analysis involving Gay's "past relevant work" is harmless because of the ALJ's alterative finding that Plaintiff's residual functional capacity for a full range of medium work allowed for the determination that Plaintiff was not disabled pursuant to Medical-Vocational Rule 203.19. (Tr. 21).  *See Shinseki,* 556 U.S. at 409; *Diorio,* 721 F.2d at 728.

Next, Gay points to the following hypothetical as further evidence that the ALJ erred in relying on the testimony of the VE.

> THE COURT: Consider a hypothetical individual with the same age, education, and work experience as the claimant who has the physical capabilities and limitations as testified to by the claimant.  Can such a hypothetical individual do any competitive work?
>
> SWEENEY: Well, based on his testimony, the thing that would come to my attention most is the pain, the reported pain level of 10, which at that level, **taking that at face value**, that would preclude employment, but nothing else that I heard really.

(Tr. 38-39).  (Emphasis added).  The court recognizes that the VE accepted Gay's "reported pain level of 10 . . . at face value" in concluding that an individual who experiences such pain would be unable to work.  (Tr. 38-39).  However, the ALJ made no reference to this statement in his opinion; nor did anyone further question the VE as to whether the entire record supported Gay's statements of disabling pain.  Thus, the hypothetical is limited to the assumption made by the VE based on the "face value" of Gay's complaints of pain and does not include any assessment of Gay's credibility.

If proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility

finding." *Foote v. Chater,* 67 F. 3d 1553, 1561 (11th Cir. 1995).  The reasons given for

discrediting pain testimony must be based on substantial evidence. *Hale v. Bowen,* 831 F.

2d 1007, 1012 (11th Cir. 1987).  Thus, the court now turns its attention to the ALJ's

conclusion with respect to Gay's allegations of pain and the reasons for that conclusion.

> The ALJ concluded "[a]fter careful consideration of the evidence" that Gay's
>
> "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."

(Tr. 19).  In support of this conclusion, the ALJ pointed to Gay's own testimony and to

various medical facts and opinions in the record.  With respect to the headaches, the ALJ

recognized that Gay reported some limitations on his daily routine, but noted that Gay is

able to cook out with friends, watch sports, and is engaged.  (Tr. 19).  Furthermore, the

ALJ assigned "significant weight" to the assessment of Dr. Fleece, consultative expert,

who opined that Gay "was not cognitively impaired."  (Tr. 19).  Additionally, the ALJ

assigned "great weight" to the opinions and findings of consultative examiner, Dr. Colley,

who reported Gay's "examination was essentially unremarkable."  (Tr. 19).  Dr. Colley

further noted Gay "had full range of motion of all extremities with no deformities . . .

normal gait, normal station and normal coordination."  (Tr. 19).  Finally, the ALJ

recognized that Gay "has not required hospitalizations or emergency room visits for any

of his impairments"; and "[i]n fact, there is little medical evidence to support his

allegations."  (Tr. 19).  Accordingly, the court finds that the ALJ "explicitly" discredited

Gay's allegations of pain, *Foote,* 67 F. 3d at 1561, and the reasons given by the ALJ are

supported by "substantial evidence". *Hale,* 831 F. 2d at 1012.  Thus, the court concludes

that in the context of this case the ALJ did not err in the limited use of the VE's

testimony.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion,

the Court concludes that the ALJ's non-disability determination is supported by

substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that

the decision of the Commissioner is **AFFIRMED.**   A separate judgment is entered

herewith.

DONE this 6th day of April, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE